EDWARD ZIMMERMAN, APPELLANT, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, DAWSON FORD INC., RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 16, 1974—Decided February 14, 1975.

318

Before Judges MICHELS, MORGAN and MILMED.

*Mr. Joseph Lipofsky* argued the cause for appellant (*Somerset Sussex Legal Services,* attorneys).

*Mr. Douglass L. Derry* argued the cause for respondents (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

PER CURIAM. This appeal is taken from a decision of the Board of Review, Division of Employment Security, which

affirmed a decision of the Appeal Tribunal, which in turn upheld a determination by the deputy that the claimant-appellant was disqualified from receiving unemployment benefits for a period commencing March 22, 1973 and ending April 9, 1973. Appellant was held disqualified for failure to report to an appointed claims office in accordance with agency regulations.

Claimant had been gainfully emloyed as the assistant manager of Dawson Ford in Summit, New Jersey, from November 1971 until February 14, 1973, on which date his employment was terminated by his employer because of lack of work. Claimant filed for unemployment benefits on February 15, 1973, and after certification of his eligibility benefits were paid through March 21, 1973.

Claimant's scheduled date to report to the local office of the Division of Unemployment and Temporary Disability Insurance was March 23, 1973. On March 21, 1973, however, he informed the local office by telephone that he would be unable to report since he would be out-of-state seeking employment. He was advised by an agency employee to notify the claims office of that fact by letter. Such a letter was sent on March 22 and received by the agency. In that letter he advised the office that he would be unable to report on March 23 since he would be out-of-state seeking employment, would be returning on April 7, and would be reporting to the office as soon as possible after his return.

Claimant testified that while in Florida he actively sought work. He described in detail the agencies to which he applied and the persons to whom he talked in an effort to locate employment in that state.

Following the unsuccessful search for employment in Florida claimant departed Florida on April 6, a Friday, by car, arriving in New Jersey on April 8, Sunday. An attempt to report on April 9 was aborted as a result of car trouble and claimant called the local office on that date to so advise them. He finally reported on April 10.

Eligibility requirements for receipt of unemployment compensation benefits can be found in *N. J. S. A.* 43:21–4. Section (a) of that provision is the source of the regulations adopted by the Division of Employment Security. It provides:

An unemployed individual shall be eligible to receive benefits with respect to any week only if it appears that:

(a) He has registered for work at, and thereafter continued to report at, an employment office in accordance with such regulations as the division may prescribe, except that the division may, by regulation, waive or alter either or both of the requirements of this subsection as to individuals attached to regular jobs, and as to such other types of cases or situations with respect to which the division finds that compliance with such requirements would be oppressive, or would be inconsistent with the purpose of this act; provided, that no such regulation shall conflict with subsection (a) of section 43:21–3 of the Revised Statutes.

Pursuant to this delegation of rule-making power, the Division promulgated a set of regulations pertaining to registration for work, reporting requirements and the procedure for making claims. The two regulations pertinent to the present controversy are *N. J. A. C.* 12:17–2.1(b) and (c). *N. J. A. C.* 12:17–2.1(b) provides:

In order to establish eligibility for benefits or for waiting period credit for any week of unemployment, the claimant shall report during each such week on the day or days and at the time or times designated by a representative of the Division to the local employment service office at which he is registered for work. A claimant who has failed to report on his assigned reporting day shall be considered as having complied with this reporting requirement; provided, he reports in person as soon as possible thereafter but not later than seven days after his assigned reporting day; and provided further, he shows good cause for having failed to report sooner.

*N. J. A. C.* 12:17–2.1(c) provides:

In order to file a continued claim for benefits for a week or weeks of unemployment, the claimant shall report in person to the local employment service office on the day and time designated by a representative of the Division, after the completion of such week or weeks, and certify that with respect to such week or weeks he was

unemployed, eligible and not subject to disqualification. The Division, for reasons found to constitute good cause for any individual's failure to report on the day and at the time designated for him to report at the local employment service office for the purpose of filing a continued claim, may accept a continued claim from such individual for the week or weeks in question; provided, he reports in person at the local employment service office within seven days after his assigned reporting day, or, if he is unable to so report, he notifies the local employment service office within such time of the reason for his failure to report on his reporting day.

The seven-day grace periods utilized in both of the above quoted sections have been expanded to 14 days due to the change in benefit payment schedule from weekly to bimonthly payments.

The Division has taken the view that claimant's letter dated March 22 had the effect of complying with section (c), validating a previous period of unemployment for which eligibility had been established by claimant reporting in person to the local office in compliance with section (b), and that the Division had accordingly honored the claim for the period ending March 21. The Division contends, however, that with respect to the following period, March 22 to April 6, the letter was an ineffective attempt to comply with section (b), and since claimant did not report in person within 14 days thereafter, i. e., by April 6, he never established eligibility for that period and therefore could not collect therefor. In taking this position the Division views sections (b) and (c) of the above quoted regulations as both being applicable with respect to each claimed two-week period of unemployment. Section (b) requires a personal appearance by the claimant on the reporting date or no later than 14 days thereafter as a condition to eligibility for that claimed two-week period of unemployment. Personal appearance by the claimant within this period of time is an indispensable prerequisite to eligibility. It is only wth respect to section (c), which concerns validating a prior two-week period of unemployment for which eligibility has already been established by personal appearance, that a letter giving sufficient reason for

an inability to personally appear can be held sufficient compliance.

Claimant, on the other hand, views sections (b) and (c) as applying alternatively to different stages of the claim. According to claimant, initial eligibility must be established by personal reporting under section (b). Once established, claims for continued unemployment and eligibility therefor are established by compliance with section (c) of these regulations, which dispenses with personal appearance where "he [claimant] reports in person * * * within [14] days after his assigned reporting day." Since claimant did report within 14 days of April 6, he complied.

■ Because of these conflicting contentions as to which meaning should be attributed to these two regulations, it is incumbent upon us to construe *N. J. A. C.* 12:17–2.1(b) and (c) together in a way so as to avoid rendering any part of these provisions inoperative, superfluous or meaningless. *Stellmah v. Hunterdon Coop. G. L. F. Serv., Inc.,* 47 *N. J.* 163, 192 (1966); *State v. Sperry & Hutchinson Co.,* 23 *N. J.* 38, 46 (1956); *Benson v. Coca Cola Co.,* 120 *N. J. Super.* 60, 63–64 (App. Div. 1972).

■ Although claimant's contention that since his was a "continued claim for benefits," only section (c) applies (dispensing with the necessity for personal appearance) and that section (b) does not apply, finds some support in section (c) which by its language applies to a "continued claim," such a construction renders meaningless the language in section (b) that in order to establish eligibility for benefits "for *any* week of unemployment, the claimant shall report during *each* such week." Such language unequivocally requiring a claimant to personally report in order to become eligible for each and every period of unemployment must be given effect.

■ Giving effect to this command in section (b), as we must, it becomes clear that both section (b) and section (c) apply to each two-week period of unemployment for which claim is made. Initial eligibility for each two-week period is established by personally reporting on an appointed day

or within 14 days thereafter at a local claims office. A claimant must also, however, comply with section (c) in order to receive benefits for that same two-week period by either reporting in person after that two-week period or within 14 days thereafter, or notifying the office why he is unable to report. The reporting requirement imposed by section (c) serves to validate a claim for a two-week period of unemployment for which a claimant has established eligibility made by personally reporting and therefore is less exacting in its requirements. In practice, one personal appearance at the office serves to comply both with section (b) with respect to the next two-week period of unemployment and with section (c) to the immediately past two weeks of unemployment, by reaffirming that after establishing eligibility therefor, he, the claimant, has remained unemployed and has not otherwise disqualified himself from benefits.

■ This is the interpretation placed upon these regulations by the Division which drafted these regulations, and since it has the effect of giving effect to all the provisions in both sections and since the agency's interpretation of its own regulations is entitled to great weight, this will be the interpretation placed on these regulations by this court. *Offhouse v. State Board of Education,* 131 *N. J. L.* 391, 395 (Sup. Ct. 1944), app. dism. 323 *U. S.* 667, 65 S. Ct. 68, 89 L. Ed. 542 (1944), reh. den. 323 *U. S.* 814, 65 S. Ct. 114, 89 L. Ed. 648 (1944).

■ Applying this interpretation to the facts of this case, it is clear that the claimant's letter of March 22 did not constitute compliance with section (b) since he did not personally report within 14 days of March 23, which would have been on April 6. He reported on April 10, four days late.

■ The advice allegedly given the claimant by a Division employee to notify the claims office that he would be unable to comply with the March 23 reporting date, does not require a finding that he complied with the applicable regulations or that the Division is estopped from asserting that he failed to do so. The advice that he notify the claims office by letter

of his inability to appear on March 23 did not advise him that personal appearance would be unnecessary. In any event, our cases are clear that we cannot here apply estoppel against this governmental agency. *Summer Cottagers' Ass'n of Cape May v. Cape May,* 19 *N. J.* 493 (1955); *Boyd v. The Dept. of Inst. and Agencies,* 126 *N. J. Super.* 273 (App. Div. 1974).

Affirmed.