ANNIE M. SELF, CLAIMANT-APPELLANT, v. BOARD OF REVIEW AND BUILDING SERVICES CORPORATION OF NEW JERSEY, RESPONDENTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted December 23, 1981—Decided December 30, 1981.

Before Judges MATTHEWS, PRESSLER and PETRELLA.

Legal Aid Society of Mercer County, *Patrick N. Budd*, Director, attorney for the appellant (*Cynthia J. Jahn*, staff attorney, of counsel and on the brief).

*James R. Zazzali*, Attorney General of New Jersey, attorney for the respondent Board of Review, (*Michael S. Bokar*, Deputy Attorney General, of counsel; *Michael J. Haas*, Deputy Attorney General, on the brief).

PER CURIAM.

Claimant Annie Marie Self appeals from a determination of the Appeal Tribunal, affirmed by the Board of Review, denying her application for unemployment compensation benefits. The reason for the denial was the administrative conclusion that she had voluntarily left her job without good cause attributable to the work. *N.J.S.A.* 43:21–5(a).

The relevant facts as found by the Appeal Tribunal and the Board of Review are largely undisputed. Claimant is a resident of Trenton who had been employed for some nine months by

Building Services Corporation of New Jersey as a cleaner of offices on the 4 p. m. to midnight shift. Her job site was located in Skillman, New Jersey, some 20 miles from her home. There is no public transportation between Trenton and Skillman and claimant does not own an operable car. She commuted to and from work with a coworker who had an automobile. In December 1979 her coworker left the employment. Claimant's attempts to find alternative transportation were unavailing. She was thus left without any feasible means of travelling to and from work. She advised her employer of her difficulty and its apparent insolubility and was terminated by reason of her inability to come to work. She thereupon applied for unemployment compensation benefits, which were denied.

*N.J.S.A.* 43:21–5(a) declares a worker disqualified for benefits if he "has left work voluntarily without good cause attributable to such work." Hence, a quit or termination resulting from commutation difficulties has ordinarily been held to be disqualifying. *See Morgan v. Board of Review*, 77 *N.J.Super.* 209 (App.Div.1962); *White v. Bd. of Review*, 146 *N.J.Super.* 268 (App.Div.1977).

We agree that a change in either the employee's or the employer's circumstances which makes the trip to and from work more inconvenient, or time-consuming or expensive than it had formerly been does not ordinarily constitute a justification for an employed person to join the ranks of the unemployed. Hence, we have no difficulty in concluding that a quit motivated by a desire to avoid an increased commutation burden is usually regardable as a voluntary quit for personal reasons. In such a case the employee ordinarily has a choice of not working or of continuing to work, albeit at a greater personal cost. Where the increased personal cost in time, trouble or money is nevertheless reasonably tolerable, a real choice does exist and the choice to leave work is fairly deemed both personal and voluntary. That was the case in *Morgan, supra.*

We view the matter differently, however, when as here the change in circumstances renders the ability to get to work not

more difficult but, rather, virtually impossible of achievement. If there are no reasonably feasible means of traveling to work, then the employee has no choice of whether or not to go to work. And without choice, one's action is, by definition, not voluntary but compelled. Claimant here did not voluntarily quit her job. She was unable to get to it for reasons for which she was not responsible and, as a matter of fundamental fairness, for which she should not be held responsible. This is not a situation as in *White, supra,* where, for personal reasons, an employee moves her residence to a place from which transportation to work is not available. Rather, this claimant was the circumstantial victim of the loss of such travel arrangements as she had been able to make and the impossibility of making a reasonable replacement.

We appreciate the legislative intent, as expressed in the 1961 amendment of *N.J.S.A.* 43:21–5(a), that purely personal reasons for quitting a job, however compelling and sympathetic they might be, nevertheless render the quit voluntary and disqualify an employee from receiving unemployment compensation benefits. *See De Lorenzo v. Board of Review,* 54 *N.J.* 361, 363 (1969). *And see White, supra,* 146 *N.J.Super.* at 270. We do not, however, regard the claimant's plight here as purely personal within the legislative intendment. In any but the most technical and restrictive sense, her plight is work-related in that her only practical means of getting to work were withdrawn through no fault of hers. In these circumstances, we do not regard the quit as voluntary within the legislative intendment. We said in *Bateman v. Board of Review,* 163 *N.J.Super.* 518 (App.Div.1978), in addressing the commutation rule of *Morgan* and *White* :

> However, the language of these decisions, referring to the rule as one which obtains "ordinarily" or "usually," implies that a case could possibly be envisaged in which a sudden change in employment circumstances greatly increasing the commuting distance from home to job would properly be regarded as a condition attributable to the work rather than to the employee. [at 521]

Where, as here, there is only one change in circumstances *vis-a-vis* the employee and the job and that change is the virtual

impossibility of getting to work because of loss of the only available transportation, we conclude that an extraordinary case has been presented and that the loss of transportation is not fairly regardable as a disqualifying factor personal to the employee.

It is ultimately our perception that denying this claimant the remedial benefits of the Unemployment Compensation Law would subvert its purpose and deny protection to those who are properly within its remedial ambit. The act, *N.J.S.A.* 43:21–1 *et seq.,* is required to be liberally construed to effectuate its remedial purpose of relieving both employees and the general public as well from the adverse impact of involuntary unemployment. *See Stonco v. Board of Review,* 106 *N.J.Super.* 6, 8 (App.Div.1969). The common-sense of the situation here mandates the conclusion that claimant was involuntarily unemployed and is, therefore, entitled to the benefits of the Act.

To the extent our views here differ from those expressed in *White v. Board of Review, supra,* we expressly reject *White's* contrary rationale.

The determination appealed from is reversed and we remand to the administrative process for calculation of claimant's benefits.